(27 Misc. Rep. 687.)

### STEINSON v. BOARD OF EDUCATION.

(Supreme Court, Trial Term, New York County. June 12, 1899.)

TEACHERS—LICENSE—RENEWAL—EMPLOYMENT.

    Under Consol. Act (Laws 1882, c. 410) § 1040, requiring a teacher in the New York City schools to have a license to teach, issued by the superintendent of the board of education, such teacher becomes disqualified, and his employment ceases, on the refusal of the superintendent to renew his license, though he has a certificate from the state superintendent of public instruction.

Action by George Steinson against the board of education to recover for services as teacher in the common schools of the city of New York. Judgment for defendant.

Townsend & McIlvaine, for plaintiff.

John Whalen and T. Farley, for defendant.

McADAM, J. The action is to recover $13,824 as so much salary due to the plaintiff as teacher in the public schools from March 12, ·1890, to March 12, 1898. It appears that, on July 16, 1883, the plaintiff received a certificate from the "state superintendent of public instruction" to the effect that, his superior moral, intellectual, and scientific qualifications as a teacher of youth having been established by satisfactory examination, the plaintiff was licensed to teach any public school in the state. Thereafter the plaintiff was examined by the local authorities, found qualified to teach in the common schools of the city of New York, and he thereupon received from John Jasper, Esq., superintendent of the board of education, a license to act as teacher in the grammar schools of said city. This license was what is called a "provisional" one, which, by its terms, is limited in its operation and duration to the term of six months from the date thereof. The plaintiff entered 'upon his duties under this license and subsequent renewals thereof, the last of which expired March 12, 1890. On and after that day the defendant declined to renew the license or receive any further services from the plaintiff, and he has performed no work for the defendant since that time. The state superintendent, on an appeal taken by the plaintiff, held that the refusal by the local board and its superintendent to renew the plaintiff's license and continue him in employment was unlawful. Plaintiff thereafter applied for a mandamus compelling the board of education to pay his salary, upon the assumption that he was still in its employ, and that its action in refusing to longer permit him to teach in the public schools was illegal, under the decision of the state superintendent. The application was denied on January 6, 1891, by Mr. Justice Beach, whose decision was sustained on appeal. 60 Hun, 486, 15 N. Y. Supp. 408, affirmed in 148 N. Y. 766, 43 N. E. 989. On December 3, 1892, Mr. Justice Freedman denied a similar application. A like ruling was made by Mr. Justice Russell in September, 1896, on a renewed application. In his opinion Judge Russell said:

    "The board of education maintains that it may issue licenses for a definite period, and when that period expires the teacher may no longer act as a teacher unless the license be renewed. It has been the custom of the board of educa-

tion of the city of New York for many years to issue these limited licenses. There is much to favor the existence of such power. Ordinarily the power to issue a license to serve the public, where the period of its existence is not definitely regulated by law, is broad enough to cover the power to issue a license which is not perpetual in its character, but limited in operation. All incidental powers essential to the exercise of that granted may be presumed to be given to the board of education. The employment of a teacher is a right requiring wise discretion, because his duties are so important to the care and management of the children confided to his charge and training for so many days in a year that error in this respect may be attended with unfortunate results. No one can appreciate this more keenly than one who has had occasion to perform the duties of a teacher. So many things go to make up the qualifications of one who instructs and guides the young that it requires excellent judgment to bear in mind all of the reasons for a choice. To say that the board should not. have the power to issue licenses experimental in their duration would compel a resort to the cumbrous, and perhaps lengthy, methods of removal pointed out by statute. The teacher may be practically unknown when employed, although his examination discloses apparent proficiency and usefulness. He may have unrecognized attributes, physical or mental, which would render his service as shown by his performance unattainable for the particular branch of teaching given him, without justifying the charge of immorality or incompetency. It seems, therefore, that the reason as well as the general scope of the law would justify the right of the board of education to place a limit upon the term of the license granted, without requiring the license and the particular employment under that license to be perpetual. Nor is this construction a hardship to the person employed. There is no compulsion in his acceptance of a term license. He is free to accept or reject, and in the present case this teacher voluntarily chose to serve under the terms proffered, and act under a six months' license renewed from time to time, thus making a voluntary contract with the board of education, the beneficial part of which he has accepted, but he now seeks to reject that part of the contract which gives a definite termination to his office of employment."

In his opinion, Judge Beach said:

"It is necessary, under the Consolidation Act (Laws 1882, c. 410) § 1040, that the relator [plaintiff here] should hold a license to teach issued by the city superintendent. The one held by him expired March 12, 1890, and was not renewed. He thus became disqualified, and his employment terminated. The granting of a license seems to be discretionary with the city superintendent, and the court will not interfere with the lawful exercise of that discretion. The decision of the state superintendent is based upon his opinion that the state license held by relator was sufficient in that behalf. Such an opinion is in direct conflict with the special laws applicable to the city of New York, and cannot be concurred in."

Judge Russell's decision was affirmed by the appellate division (20 App. Div. 452, 46 N. Y. Supp. 782) and the court of appeals (158 N. Y. 125, 52 N. E. 722). The appellate courts placed their decision upon two grounds: First, laches; second, that the plaintiff's more appropriate remedy to test the validity of his demand was by action of debt to recover the salary claimed. People v. Thompson, 25 Barb. 73; People v. Wood, 35 Barb. 653. The plaintiff is now before the court in the form of action recommended; and is entitled to have determined the questions left undecided by the appellate courts. The opinions filed by Justices Beach, Freedman, and Russell on the respective applications heard by them clearly indicate that, in their judgment, the plaintiff's employment by the defendant ceased with the termination of his provisional license on March 12, 1890, and that he had, therefore, no grievance requiring redress. The trial court feels constrained to follow the views of these learned jurists, and to

hold, as they held, that the plaintiff's employment ceased on March 12, 1890,—a course which requires it to find for the defendant, and such a judgment is accordingly directed. If the plaintiff desires to have the appellate division authoritatively settle the questions which it deemed should be adjudicated only in this form of action, he will, for that purpose, be allowed 60 days to make a case, with a stay of execution until the determination of the appeal.